IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| HAIDER ABBAS AL-KINDI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV03-459-E-LMB |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **DECISION AND ORDER** |
| EDWARDS BROTHERS, INC., and | ) | |
| MICHAEL VANLEUVEN, jointly or | ) | |
| severally, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

Pending before the Court are Plaintiff's Motion to Amend or Alter Judgment or in the Alternative, Motion for Judgment Notwithstanding the Verdict (Docket No. 193), Plaintiff's Motion for Attorney Fees and Costs (Docket No. 197), Defendants' Motion to Alter Judgment (Docket No. 202), Associates' Motion to Intervene (Docket No. 206), and Associates' Motion for Reimbursement (Docket No. 216).  Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Order.

## I.

## BACKGROUND

In this diversity action, Plaintiff Haider Abba Al-Kindi ("Al-Kindi") claimed damages arising out of personal injuries allegedly caused by an accident involving two

semi-trucks, one of which he was driving.  He alleged that the negligence of the driver of the other truck, Defendant Michael VanLeuven ("VanLeuven"), was the proximate cause of his damages.  Plaintiff also alleged that Defendant Edwards Brothers, Inc. ("Edwards Brothers"), VanLeuven's employer, was vicariously liable for the negligence of its employee and was otherwise independently negligent, aside from its vicarious and imputed liability.  The parties each filed motions for summary judgment on various issues.  The Court granted Defendants' motion for summary judgment on the independent negligence theory but denied summary judgment on all other issues.  *Order* (Docket No. 135).

Additionally, Associates Insurance Company ("Associates"), the company with which Plaintiff's employer had a trucker's insurance policy, moved to intervene.  In the interests of preventing improper considerations of insurance by the jury, the Court denied the motion.  Thereafter, the Court denied Associates' Motion to Reconsider the Order denying the Motion to Intervene, but allowed Associates to participate in any motions presented to the Court and also instituted other guidelines intended to protect Associates' interests.  *Orders* (Docket Nos. 98 and 135).

The case then proceeded to trial before a jury.  On March 24, 2005, a verdict was entered in favor of Plaintiff in the amount of $50,000 for non-economic losses or injuries, $400,000 for lost earnings, $30,000 for necessary medical expenses, and $0 for physical or mental impairment.  The jury attributed 10% negligence to Plaintiff.  Judgment was entered for Plaintiff on the verdict in the amount of $432,000 on March 28, 2005.

**MEMORANDUM DECISION AND ORDER –2–**

## II.

## DEFENDANTS' MOTION TO ALTER JUDGMENT

The Court will first address and resolve the issue which has consumed a considerable amount of time, energy, research, analysis and consideration.  Initially, the Court was greatly concerned and troubled about what appeared to be the incongruity and internal inconsistency of the jury's verdict which awarded Plaintiff a substantial amount for lost earnings, but awarded him nothing for physical or mental impairment.  However, after extensive research, analysis and serious consideration of the controlling legal authorities, and while the verdict at first blush appears to be an inconsistent and incongruous result, the Court concludes that upholding the verdict is required by Colorado law.

Defendants move, pursuant to Federal Rule of Civil Procedure 59(e), to decrease the jury's $400,000 award for lost earnings damages.  The law is well-established in this Circuit that a judgment should not be reconsidered under Rule 59(e) "absent highly unusual circumstances." *389 Orange Street. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  More particularly, the Ninth Circuit Court of Appeals recognizes that a "jury award must be upheld if it is supported by substantial evidence." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004), *amended by* Nos. 03-35188, 03-35245, 2004 WL 2376507 (9th Cir. Oct. 25, 2004) (incorporating amendments into original pagination at 384 F.3d 700) (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).  That is, "[t]he relevant inquiry is whether the evidence, construed in the light most

**MEMORANDUM DECISION AND ORDER –3–**

favorable to the non-moving party permits only one reasonable conclusion, and that conclusion is contrary to the jury verdict . . . ." *Polar Bear Prods., Inc.*, 384 F.3d at 709.

In moving to reduce the $400,000 lost earnings award, Defendants argue the following facts establish that the award was excessive, not supported by the evidence, and inconsistent: "(1) [Plaintiff] only submitted evidence of roughly $100,000.00 in past lost wages; (2) the jury awarded [Plaintiff] only $50,000.00 in noneconomic damages; (3) the jury did not award [Plaintiff] any future medical expenses and/or expenses for any impairment; and (4) [the jury] determined that [Plaintiff] was not physically or mentally impaired." *Defs.' Mem. in Supp.*, pp. 4–5 (Docket No. 202-2).

First, although strongly disputed, there was evidence as to Plaintiff's wage loss presented at trial which could amount to more than $100,000. Plaintiff's economic expert witness testified that lost wages could exceed $1,020,327 and Plaintiff introduced into evidence Exhibit 51, a chart detailing projected earnings in excess of $100,000 assuming total disability. *See Pl.'s Trial Ex. 51*. In light of such evidence, the jury's verdict in this respect, although disputed, was supported by substantial evidence.

Second, the fact that the jury awarded $50,000 in noneconomic damages, $30,000 in necessary medical expenses, and $0 for physical and/or mental impairment does not necessarily lead to the conclusion that the award of $400,000 for lost earnings is not allowed under controlling Colorado case law.

Of all the awards, and the one issue which has so troubled and concerned the Court in analyzing and ultimately ruling on these motions, it appears that having the greatest

**MEMORANDUM DECISION AND ORDER –4–**

potential to demonstrate an unreasonable inconsistency is the award of $0 for physical

and/or mental impairment as relates to the $400,000 lost earning award.  Defendants

interpret the $0 award as indicating that the jury found that Plaintiff "did not suffer any

physical or mental impairment."  *Defs.' Mem. in Supp.,* p. 5.  If true, then it would seem

odd or at least unusual for a jury to award hundreds of thousands of dollars in lost

earnings to someone who has not been mentally or physically impaired.  This was the

issue which the Court itself initially was concerned about even before post-trial motions

were filed because the verdict appeared to be internally inconsistent and incongruous in

that regard.

The Special Verdict Form (with the definitions from Jury Instruction No. 44 set

forth in brackets) reads as follows:

(A)   What is the total amount of Plaintiff's damages, if any, for
noneconomic losses or injuries?  Noneconomic losses or
injuries are those losses or injuries described in paragraph 1 of
Instruction No. 44 [including pain and suffering,
inconvenience, emotional stress, and impairment of the
quality of life].  You should answer "0" if you determine there
were none.

Amount  $50,000

(B)   What is the total amount of Plaintiff's damages, if any, for
economic losses?  Economic losses are those described in
numbered paragraph 2 of Instruction No. 44 [including loss of
earnings or damage to his ability to earn money in the future,
reasonable and necessary medical, hospital, and other
expenses, and replacement services].  You should answer "0"
if you determine there were none.

Lost Earnings                               $400,000

**MEMORANDUM DECISION AND ORDER –5–**

Necessary Medical Expenses          $30,000

(C)     What is the total amount of Plaintiff's damages, if any, for
        physical and/or mental impairment?  You should answer "0"
        if you determine there were none.

Amount  $ 0

*Special Verdict Form*, pp. 2–3 (Docket No. 188); *see also Instructions to the Jury*, p. 31

(Docket No. 185).  A careful reading of the second sentence of section C of the verdict

form refers to "damages" and it cannot be reasonably interpreted or read as a jury finding

that there was no "physical and/or mental impairment."

        The Colorado case law authority which brings a modicum of sense and an

explanation to all of this is the Colorado Court of Appeals' holding in a remarkably

similar case, *Cooley v. Paraho Dev. Corp*., 851 P.2d 207 (Colo. Ct. App. 1992), *aff'd*,

*Gen. Elec. Co. v. Niemet*, 866 P.2d 1361 (Colo. 1994).  In that case, the Colorado Court

of Appeals expressly ruled that an award of economic damages (which, as defined in this

case, included the lost earnings award) was not internally inconsistent with a failure to

award damages for physical impairment.  *Id.* at 211. The jury in *Cooley* had returned a

verdict of  $350,000 for economic damages and $350,000 for noneconomic damages but

nothing for physical impairment. *Id*. at 208.  In upholding the verdict, the Colorado

appellate court reasoned that although there was no award for physical impairment, the

"Plaintiff sustained a physical impairment, that such impairment will result in future pain

and suffering and future impairment of plaintiff's earning capacity and quality of life, but

**MEMORANDUM DECISION AND ORDER –6–**

that plaintiff had not and will not suffer any *additional* losses as a result of that physical impairment." *Id.* at 211 (emphasis in original).

Defendants argue that *Cooley* is distinguishable for several reasons: (1) *Cooley's* injuries were more obvious than Plaintiff's "dubious and subjective" claimed injuries; (2) it was unknown in *Cooley* whether the economic damages award included future medical expenses whereas in this case the jury awarded no future medical expenses; (3) the *Cooley* court also explained that absent a physical impairment, plaintiff could not have sustained a future loss of earnings, or a future impairment of earning capacity, whereas, in this case, the jury found no physical impairment; and (4) the jury instruction in *Cooley* was different from that in this instant action. *Defs.' Reply,* p. 3 (Docket No. 220). The Court disagrees.

First, there was substantial, albeit disputed, evidence upon which the jury could have concluded that Plaintiff's injuries were more than "dubious and subjective," and there was evidence admitted at trial that Plaintiff is no longer employable as a truck driver. Second, whether or not the *Cooley* verdict included future medical damages is not relevant to the narrow issue presented here. Third, it is apparent in *Cooley* that the court's reference, i.e., that absent a physical impairment, *Cooley* could not have sustained future loss of earnings, was meant to explain that the only way the jury would have awarded such a large amount of economic damages was if the jury had also found that there had been a physical impairment. The Colorado court did not hold that the Cooley jury had to have been awarded damages for a physical impairment to recover economic damages.

**MEMORANDUM DECISION AND ORDER –7–**

Fourth, the difference between the instruction in *Cooley* and the instruction given in this case is not significant.

The similarities between *Cooley* and this action are greater than are the differences.  In both *Cooley* and this case, the jury was instructed that noneconomic damages included items such as *past or future* pain and suffering, inconvenience, emotional stress, and impairment of quality of life.  *Compare Jury Instructions*, p. 31, *with Cooley*, 851 P.2d at 210.  The jurors were further instructed that economic damages included *past or future* loss of earnings or impairment of earning capacity and reasonable and necessary medical, hospital, and other expenses.  *Compare Jury Instructions*, p. 31, *with Cooley*, 851 P.2d at 210.  In both cases, neither the Al-Kindi nor the *Cooley* jury was instructed on the nature of damages to be awarded in the physical impairment category.

One of the key and decisive portions of the *Cooley* court's reasoning which is applicable to the instant action is that the jurors "reasonably could have concluded that all damages for those elements specified under the economic and noneconomic damage categories were required to be included under those two categories and that damages assessable under the third category [the physical or mental impairment category] were to recompense plaintiff for injury or losses *different from, and in addition to*, the injuries or losses specifically referred to under the first two categories."  *Cooley*, 851 P. 2d at 211 (emphasis added).

Just as the Colorado court reasoned, the jury's verdict in this action can be reasonably interpreted to mean that they believed Plaintiff sustained certain injuries in the

**MEMORANDUM DECISION AND ORDER –8–**

accident, for which he was 10% responsible, that these injuries were sufficiently serious to preclude him from future employment as a truck driver but which require no further medical treatment.  Likewise, the jury in this action could have concluded that despite the fact that Al-Kindi is precluded from future employment as a truck driver, he is able to perform some work, albeit work at a lower wage.

Again, the determination of the amount of damages is within the sole province of the jury, and the award must be upheld unless totally unsupported in the record.  *Dupont v. Preston*, 9 P.3d 1193, 1199 (Colo. Ct. App. 2000), *aff'd on other grounds*, 35 P.3d 433 (Colo. 2001), *superseded by statute as stated in Price v. Walgreen Co.*, 322 F. Supp. 2d 1179 (D. Colo. 2004); *Margenau v. Bowlin*, 12 P.3d 1214, 1218 (Colo. Ct. App. 2000). The jury verdict here is not totally unsupported in the record and a construction of the evidence does not result in only one reasonable conclusion that would be contrary to the jury's verdict.  Accordingly, Defendants' Motion to Alter Judgment is denied.

### III.

### PLAINTIFF'S MOTION TO AMEND JUDGMENT

Plaintiff requests that the Court amend the verdict to award medical expenses of $100,515.93, less 10%, rather than the $30,000 awarded by the jury.  *Pl.'s Mem. in Supp.*, p. 9 (Docket No. 195).  This larger dollar figure represents the total amount of the medical bills that Plaintiff argues were proved at trial by undisputed evidence.  *Id.* at 8. Plaintiff contends that the jury improperly reduced the award based on the amount that they speculated would be paid by insurance.  *Id.* at 9.  Plaintiff bases his arguments on an

MEMORANDUM DECISION AND ORDER –9–

affidavit from juror Cory Taylor, which states in part, "[t]he reason the jury awarded $30,000 as necessary medical expenses, when the total medical expenses presented to the jury was $100,515.93, is that I and the jury believed the difference we did not award had been or would be paid by some type of insurance or work comp benefits available to Mr. Al-Kindi." *Taylor Aff.*, ¶ 6 (Docket No. 194).  Attached to the Taylor Affidavit is a copy of a note written to the Court during the deliberations asking if Plaintiff was receiving any worker's compensation, insurance, or social security benefits.  The note was prompted by Juror Taylor's noticing references to insurance on some of the medical bills.  *Id.* at ¶ 4.

Associates supports Plaintiff's motion and asserts that approximately $50,000 in medical expenses were incurred for emergency services immediately following the accident, which cannot be disputed, and that there is no reasonable basis for the award of only $30,000.  *Associates' Mem. in Supp.*, pp. 4–5 (Docket No. 217).

### A.      Rule 59(e)

Plaintiff brings the instant motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).  A district court has considerable discretion when considering a Rule 59(e) motion to amend a judgment.  *Turner v. Burlington Northern Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).  However, Rule 59(e) offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A judgment should not be reconsidered under Rule 59(e) "absent highly unusual circumstances."  *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.

1999). Amendment is appropriate under this rule if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (citation omitted).

Plaintiff asserts an amendment is appropriate because the $30,000 award for necessary medical expenses had to be the result of the jury's improper consideration of insurance, as evidenced by Juror Taylor's affidavit and the question submitted to the Court during deliberations.  However, this assertion raises several issues: 1) whether there is sufficient evidence from which to find the jury improperly considered insurance; 2) whether Plaintiff's argument is barred by the invited-error doctrine; and 3) whether allowing an increase of the award would be additur, which is prohibited in the federal courts.

### 1.      Improper Consideration of Insurance

In accordance with prior orders of the Court, during trial there had been no mention of insurance in witness' testimony or arguments of counsel in the presence of the jury.  The instructions to the jury did not refer to insurance and the Court, in continuing to avoid injecting reference to or evidence of insurance into the trial, had denied Associates' prior motions to intervene.  Nonetheless, it appears that the jury considered insurance when deliberating and discussing Plaintiff's medical expenses.

**MEMORANDUM DECISION AND ORDER –11–**

### a.    Juror Taylor's Affidavit

Juror Taylor's affidavit indicates the jury's consideration of insurance when awarding $30,000 as necessary medical expenses, rather than $100,515.93.  *Taylor Aff.*, ¶ 6.  Defendants assert the affidavit is not sufficient grounds on which to allow an amendment to the judgment because the affidavit, as initially filed, was *unsigned* and, Defendants assert, Juror Taylor cannot speak for the jury as a whole.  *Defs.' Resp.,* p. 4 (Docket No. 212).  A signed version of Taylor's Affidavit was eventually submitted to the Court but, at oral argument on July 29, 2005, Defendants argued the affidavit was a "sham," and Plaintiff's counsel acknowledged that the circumstances under which it was submitted could be viewed as "questionable."

Irregardless of all the foregoing, the Court need not determine the validity or legal consequence of Juror Taylor's affidavit because it is not properly before the Court for other reasons.  The submission of testimony or an affidavit of a juror regarding the substance of jury deliberations in order to question a verdict violates Federal Rule of Evidence 606(b), which states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.  *Nor may a juror's affidavit or evidence of any*

MEMORANDUM DECISION AND ORDER –12–

> *statement by the juror concerning a matter about which the*
> *juror would be precluded from testifying be received for these*
> *purposes.*

FED. R. EVID. 606(b) (emphasis added).  The basis for this rule is the common law rule

prohibiting the admission of juror testimony to impeach a verdict except where there was

an "extraneous influence."  *See generally Tanner v. United States*, 483 U.S. 107, 117–21

(1987).  Likewise, Colorado law which applies to this action follows that rule.  *See*

*generally Hall v. Levine*, 104 P.3d 222, 224–26 (Colo. 2005) (citing the substantially

similar COLO. R. EVID. 606(b)); *see also People v. Collins*, 730 P.2d 293, 301–02 (Colo.

1986) (holding a court may not consider juror affidavits when they concern jurors' mental

processes during deliberation); *Martinez v. Ashton*, 233 P.2d 871, 873 (Colo. 1951)

(holding that a juror may not testify, even if doing so will show that the jury

misunderstood the law or facts, failed to follow instructions, or applied the wrong legal

standard).

In a case strikingly similar to the instant action, the Colorado Supreme Court held

that juror affidavits could not be considered to impeach a verdict.  *Stewart ex rel. Stewart*

*v. Rice*, 47 P.3d 316 (Colo. 2002) (en banc).  In *Stewart*, the Colorado court addressed a

special verdict awarding $696,000 in noneconomic damages, $440,000 in economic

damages, and $1,136,000 in physical impairment damages.  *Id*. at 317.  After the verdict,

Defendants realized that the sum of the economic and noneconomic damages was equal to

the physical impairment damages figure.  *Id*.  In *Stewart*, counsel for Defendants obtained

affidavits from several jurors stating that they did not intend to make an award for

**MEMORANDUM DECISION AND ORDER –13–**

physical impairment damages but had meant the third line of the written verdict to be the total of the damages award. *Id*. at 317–18. The plaintiff subsequently obtained counter-affidavits from the same jurors reaffirming their original verdict. *Id*. at 318. The court determined that none of the affidavits were admissible under Colorado Rule of Evidence 606(b) because they did not address matters that came within the rule's exceptions. *Id*. at 320.

The Affidavit of Cory Taylor, and the purpose for which it was submitted, falls squarely within the prohibitions of the rule precluding impeachment of the verdict on this basis. Accordingly, though the Court shares counsel's concern that the jury may well have, in fact, considered insurance, the Court cannot consider the Taylor Affidavit because the facts in it do not refer to extra-judicial information or outside influence.

### b.      Independent Knowledge of the Court

Though the Court cannot consider Juror Taylor's Affidavit, there is other independent evidence that the jury improperly considered insurance during deliberations, i.e., Juror Taylor's question to the Court, asking if Plaintiff was receiving any worker's compensation, insurance, or social security benefits. *Taylor Aff.*, p. 3.

Even considering Juror Taylor's question to the Court, there is not sufficient evidence to demonstrate the jury's improper consideration warrants raising the award of medical expenses from $30,000 to $100,515.93. However, on the other hand, there is substantial evidence in the record indicating that Plaintiff's injuries were not as severe as he claimed.

**MEMORANDUM DECISION AND ORDER –14–**

For example, Drs. Mallory, Nilsson, and Wilson all made observations during their trial testimony upon which a reasonable jury could find Plaintiff's injuries resulting from the accident were less severe than Plaintiff alleged.  First, in his videotaped deposition, Dr. Phillip Mallory noted that the final diagnoses of Plaintiff at the Swedish Medical Center, the hospital to which Plaintiff was transported after the accident, was that Plaintiff had sustained only a mild concussion.  *Videotape Dep. of Phillip Mallory, M.D.*, in Denver, Colo. (Feb. 24, 2005).  Dr. Mallory further noted upon discharging Plaintiff, that Plaintiff might have been representing a hysterical reaction, i.e., when "there's no objective indication of injury and a person continues to complain of symptoms." *Id.* Second, as seen in Plaintiff's Exhibit 60, the Neuropsychological Evaluation of Plaintiff by Dr. David E. Nilsson, Dr. Nilsson noted that he had "rarely seen such an aggressive mild head injury treatment regimen." *Neuropsychological Evaluation of Dr. David E. Nilsson*, p. 6 (Plaintiff's Exhibit 60).   Third, during his trial testimony, Dr. Nilsson made numerous references such as to "inconsistencies," a "red flag," "areas of concerns," and the "suspect" nature of Plaintiff's reports of unconsciousness.  *Trial Testimony of Dr. David E. Nilsson*, in Boise, Idaho (Mar. 22, 2005).  Further, when Dr. Nilsson was asked whether the suspect nature of Plaintiff's unconsciousness reports was "suggestive of any malingering," Dr. Nilsson responded, "It certainly raises that as a strong consideration." *Id.*  Fourth, during Dr. Richard Wilson's trial testimony, Dr. Wilson went into great detail as to the "red flag" raised by Plaintiff's progression of varying reports on whether he was knocked unconscious during the accident.  *Trial Testimony of Dr. Richard Wilson*, in

**MEMORANDUM DECISION AND ORDER –15–**

Boise, Idaho (Mar. 22 & 23, 2005) (recounting (1) that Trooper Gale had indicated that when he came upon the accident, Plaintiff was able to communicate, walk back to the squad car, and fill out paperwork and that Plaintiff had indicated he wasn't injured; (2) that the ambulance crew who saw Plaintiff a few hours later, using a Glasgow coma scale, rated Plaintiff as normal; (3) that Dr. Fox, who saw Plaintiff shortly after the accident, had noted that Plaintiff had denied losing consciousness; (4) that Dr. McVicker, who saw Plaintiff in the emergency department, had noted that Plaintiff had indicated that he hadn't lost consciousness; (5) that the first real discussion of any loss of consciousness was reported to a doctor by Plaintiff the day after the accident, at which time he indicated that he had been unconscious for about ten minutes, though was still able to describe what had happened during the accident in "pretty good detail," which, Dr. Wilson testified, raised "a question in [his] mind, because, normally, if you're knocked unconscious you don't remember all of these kinds of things that [the doctor] described"; (6) that several months later, on January 30, 2003, when Plaintiff was seen by Dr. Maaz in Michigan, Plaintiff reported that "he was unconscious for thirty minutes and was taken to a local hospital where he woke up"; (7) and that Dr. Van Horn, who also saw Plaintiff several months after the accident, noted that Plaintiff had reported losing consciousness for approximately thirty minutes.)

In light of such evidence, the Court recognizes that the expert medical testimony as well as the damage evidence was strongly disputed by experts testifying on both sides of the case and concludes it is the function of the jury to make that determination, and

**MEMORANDUM DECISION AND ORDER –16–**

certainly it is not the role of this judicial officer to be the metaphorical thirteenth juror on this or any other factual issue. That determination is best left to the jury.

Therefore, it can safely be said that the Court cannot be reasonably certain to what, if any, extent insurance considerations affected the jury's verdict. In the Court's view, there are ample reasons and a legally-sufficient basis for a reasonable jury to have found that not all of Plaintiff's claimed injuries resulted from the accident or required the amount of treatment he received. Therefore, the award of $30,000 for medical expenses, rather than $100,515.93, is based upon substantial evidence. Accordingly, as the Ninth Circuit Court of Appeals has recognized, absent a "highly unusual circumstance," that a judgment should not be altered or amended under Rule 59(e). Thus, Plaintiff's motion on this asserted basis is denied.

### 2. Invited Error Doctrine

Further, Plaintiff's motion to amend the judgment should also be denied because Plaintiff is barred under the invited-error doctrine from complaining of the jury's potential improper consideration of insurance which were caused by his own actions. In this regard, Plaintiff invited the alleged error by failing to redact multiple obvious references to insurance in the medical bills and statements admitted into evidence and submitted to the jury. *Defs.' Resp.,* p. 4.

According to the invited error doctrine, a party may not complain, on review, of errors for which he was responsible. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (quoting *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336

**MEMORANDUM DECISION AND ORDER –17–**

(9th Cir. 1985)).  Colorado also recognizes the general rule, i.e., that "[o]ne who has

injected into evidence improper matter which apparently the jury acted upon is in no

position to complain."  *Palmer v. Gleason*, 389 P.2d 90 (Colo. 1964) (citing *Bolles v.*

*Kinton*, 263 P. 26 (Colo. 1928)).

A review of the exhibits reveals numerous references to "insurance."  *See*

*Plaintiff's Trial Exhibits 41, 47, 65,* and *66.*  In fact, Plaintiff's Exhibit No. 65 alone

consists of more than thirty pages with the heading "**HEALTH INSURANCE CLAIM**

**FORM**."  Further, on the ninth page of Plaintiff's Exhibit No. 28 is the unignorable

statement, "ESTIMATED INSURANCE DUE . . . 37963.23."  Other courts in cases in

which there were fewer and less obvious "insurance" references than these have applied

the invited-error doctrine.  *See Shugart v. Central Rural Elec. Coop.*, 110 F.3d 1501,

1506 (10th Cir. 1997) (finding the invited-error doctrine to apply where counsel's list of

exhibits submitted to the jury contained an entry for medical receipts entitled "Medical

bills (relevant) with reference to insurance redacted").  The Tenth Circuit Court of

Appeals' reasoning in *Shugart* is sound and akin to case law in the Ninth Circuit Court of

Appeals and Colorado state case law.  *See, e.g.*, *United States v. Guthrie*, 931 F.2d 564,

567 (9th Cir. 1991); *Palmer v. Gleason*, 389 P.2d 90 (Colo. 1964).  It is not disputed that

in this instant action it was Plaintiff's responsibility to redact all references to insurance in

the exhibits and testimony of witnesses.  Having failed to do so, Plaintiff cannot now

complain that the jury may have considered insurance to his detriment.


**MEMORANDUM DECISION AND ORDER –18–**

Furthermore, the Court will note that, after receiving Juror Taylor's question it had considerable discussion on the record with counsel regarding the wording of the response. Counsel for both parties rejected the Court's initial suggestion that the response use new language suggested in a then very recent Idaho Supreme Court case. *See Kuhn v. Proctor*, 111 P.3d 144 (Idaho 2005). That language proposed that jurors be instructed that "whether there is or is not insurance is a fact that should not be discussed or considered by the jury. The case should be decided solely upon the facts and law presented to the jury." *Id.* at 148. In this case, the Court also carefully advised counsel of an earlier comment made by one of the jurors (believed to be the same juror who had submitted the question) to one of the bailiffs that he had noticed insurance references on some of the bills. Nonetheless, the parties stipulated to a more general response which stated: "The case should be decided solely upon the exhibits and testimony and law as stated in the jury instructions presented to you." After deciding against the response suggested by the Court, which would have made it clear to the jury that it was to ignore any references on the bills to insurance (which references Plaintiff had failed to redact), Plaintiff cannot now seek to modify the jury verdict or the judgment on that basis. Plaintiff invited error both by initially failing to redact the references to insurance and then by rejecting an instruction that would have specifically precluded the jury's consideration of insurance. *See United States v. Guthrie*, 931 F.2d 564 (9th Cir. 1991) (holding the invited-error doctrine precluded defendant from complaining on appeal that the trial court had failed to instruct the jury on constructive possession when the

**MEMORANDUM DECISION AND ORDER –19–**

defendant had declined the court's offer to so instruct the jury after the jury sent a note concerning defendant's responsibility for activities that occurred in his home and when defendant instead requested the court to reread the general jury instruction).

### 3.    Additur

Even assuming the jury improperly considered insurance, amending the judgment to increase the medical expenses award would potentially constitute additur, which is expressly prohibited in the federal courts.  Additur is defined as "a practice by which a judge offers a defendant the choice between facing a retrial and accepting a damage award higher than that determined by the jury." *Liriano v. Hobart Corp*., 170 F.3d 264, 272 (2nd Cir. 1999).  Under the rule of *Dimick v. Schiedt*, 293 U.S. 474 (1935), federal courts may not use additur because it violates the Seventh Amendment's right to a jury trial.  The Supreme Court reasoned that in the case of a remittitur, where the court *reduces* the amount of a jury award, the "jury has already awarded a sum in excess of that fixed by the court," but in the case of an additur, "no jury has ever passed on the increased amount."  *Id.* at 485.  The court further explained:

> Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess-in that sense that it has been found by the jury-and that the remittitur has the effect of merely lopping off an excrescence.  But, where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict.  When, therefore, the trial court here found that the damages awarded by the jury were so inadequate as to entitle plaintiff to a new trial, how can it be held, with any semblance of reason, that that court, with the consent of the defendant only,

**MEMORANDUM DECISION AND ORDER –20–**

> may, by assessing an additional amount of damages, bring the constitutional right of the plaintiff to a jury trial to an end in respect of a matter of fact which no jury has ever passed upon either explicitly or by implication?  To so hold is obviously to compel the plaintiff to forego his constitutional right to the verdict of a jury and accept "an assessment partly made by a jury which has acted improperly, and partly by a tribunal which has no power to assess."

*Id.* at 486–87.

An exception to the *Dimick*  prohibition was recognized in *Liriano* where, even though the trial court increased a jury award, the appellate court ruled that there was no true additur.  *Liriano*, 170 F.3d at 272.  The court reasoned that "[t]he district court did not divine a figure and then make the defendants choose between an increased damage award and a new trial.  It simply adjusted the jury award to account for a discrete item that manifestly should have been part of the damage calculations and as to whose amount there was no dispute. When a jury has already found liability, federal courts may make such adjustments without running afoul of *Dimick*."  *Id*. at 272–73 (increasing award to reflect hospital bill that was not in dispute but which had been omitted from the verdict) (citing *United States EEOC v. Massey Yardley Chrysler Plymouth, Inc*., 117 F.3d 1244, 1252–53 (11th Cir.1997) (increasing amount of back pay award where liability was established but jury inexplicably limited award to six months of back pay)); *Decato v. Travelers Ins. Co.*, 379 F.2d 796, 798 (1st Cir.1967) (recognizing exception to *Dimick* but vacating trial court's increase of jury verdict because of dispute regarding damages).  However, the exception is very narrow and is applicable only when damage claims are

**MEMORANDUM DECISION AND ORDER –21–**

definite and incontrovertible.  *See Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 985 (5th Cir. 1989) (holding that additur is permissible when damages are stipulated before trial).

The Ninth Circuit Court of Appeals has not expressly adopted this exception to *Dimick*.  It has ruled, citing *Dimick*, that "[f]ederal practice does not permit the use of additur in cases where the amount of damages is disputed."  *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 837 (9th Cir. 1963), *cert. denied* 376 U.S. 950 (1964).  Arguably, however, where the amount of damages is *not* disputed, the Ninth Circuit would permit additur.

Plaintiff contends that Defendants did not dispute the medical bills admitted into evidence.  *Pl.'s Mem. in Supp.*, pp. 4–5 ("These billings were agreed to for submission into evidence by the Plaintiff and Defendants through their counsel.  Defendants never objected to any of the medical billings or offered any evidence that the medical bills were not necessary or reasonable for the injuries sustained by the Plaintiff.").  In response, Defendants contend that the amount of medical expenses *was* disputed and that considerable evidence was introduced to support Defendants' defenses that the medical expenses were unreasonable, unnecessary, and not all caused by the accident.  *Defs.' Resp.*, p. 2.  Defendants respond that they stipulated only as to the authenticity of the bills for admissibility purposes alone and not that the bills were reasonably and necessarily incurred for injuries sustained in the accident.  *Id.* at p. 3.

In the Court's recollection of the evidence, which has been born out and supported by a careful and detailed review of the record, Defendants clearly disputed the extent of

**MEMORANDUM DECISION AND ORDER** –22–

the injuries claimed by Plaintiff both through cross examination of Plaintiff's medical witnesses and by presentation of their own medical experts.  At trial Drs. Mallory, Nilsson and Wilson, during questioning by Defendants, testified as to the "red flags," "inconsistencies," and possibilities of malingering, as previously recounted in some considerable detail earlier in this Order.  The record is clear that Defendants likewise strongly disputed the amount of medical expenses incurred by Plaintiff.  Therefore, in addition to the medical expenses being disputed, the *Liriano* exception cannot be utilized because the requested increase of the jury's award of damages to award additional special damages for medical expenses would constitute an impermissible additur.

### B.      Rule 50(b)

As an alternative to a Rule 59(e) motion to amend the judgment, Plaintiff seeks a judgment notwithstanding the verdict, which should properly be referred to as a renewed motion for a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).

Both parties agree that whether applying Colorado or federal law, the standard for deciding a Rule 50(b) motion is the same.  *Pl.'s Mem. in Supp.,* p. 5; *Defs.' Resp.,* p. 4. Essentially, judgment as a matter of law should be entered if a reasonable person could not reach the same conclusion as the jury when viewing the evidence in the light most favorable to the non-moving party.  *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151 (9th Cir. 1988); *Boulder Valley Sch. Dist. R-2 v. Price*, 805 P.2d 1085, 1088 (Colo. 1991), *overruled on other grounds by Community Hosp. v. Fail*, 969 P.2d 667

**MEMORANDUM DECISION AND ORDER –23–**

(Colo. 1998).  The determination should be made without accounting for the credibility of the witnesses, weighing the evidence, or substituting the Court's judgment for that of the jury.  *The Jeanery, Inc.*, 849 F.2d at 1151.  In other words, in order to prevail on a motion for judgment as a matter of law, Plaintiff must show that there was no legally-sufficient basis for a reasonable jury to find as it did.  *Turner v. Burlington No.,* 338 F.3d at 1062 (quoting *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 859 (9th Cir. 2002) (en banc), *cert. granted*, 537 U.S. 1099 (2003), *aff'd*, 539 U.S. 90 (2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000))).

If a Rule 50(a) motion for judgment as a matter of law "made at the close of all the evidence is denied, Rule 50(b) allows the moving party to 'renew' its motion within ten days after the court's entry of final judgment in the case.  Fed. R. Civ. P. 50(b).  A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."  *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).  A review of the record indicates that, in addition to several other issues, Plaintiff did move for judgment as a matter of law on the medical bills, which the Court denied.

Defendants contend that there is a legally-sufficient basis for the jury to have found as it did, i.e., to find that Plaintiff was entitled to only $30,000 for necessary medical expenses, not $100,515.93.  That is, Defendants contend that the jurors could have concluded that Plaintiff was not seriously injured as a result of the accident, that he failed to mitigate his damages, that his expenses were not reasonable or necessary, or that

**MEMORANDUM DECISION AND ORDER –24–**

the accident was not the cause of all of the expenses.  *Defs.' Resp.,* p. 7.  The Court agrees.

Defendants submitted sufficient evidence to challenge Plaintiff's claims that all of the submitted medical bills were reasonably and necessarily incurred as a result of Defendant VanLeuven's negligence.  The Court finds, and thus concludes, that there is a sufficient basis for the jury to have found that Plaintiff was not entitled to receive the entire dollar amount reflected in the medical bills for the reasons set forth above. Accordingly, Plaintiff's renewed motion for judgment as a matter of law is denied.

## IV.

## PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

Plaintiff moves for an award of attorney fees and costs pursuant to Federal Rules of Civil Procedure 54 and 68, as well as Colorado Revised Statute § 13-17-202.

### A.      Attorney Fees

In diversity actions, federal courts must apply state law with regard to the allowance or disallowance of attorney fees.  *Michael-Regan Co., Inc. v. Lindell*, 527 F.2d 653, 656 (9th Cir. 1975).  Because this is a diversity action, this Court must apply Colorado law.

Colorado follows the American Rule that in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by a prevailing party in a tort action.  *Double Oak Const., L.L.C. v. Cornerstone Development Intl., L.L.C.*, 97

P.3d 140, 150 (Colo. Ct. App. 2003), *cert. denied*, No. 03SC746, 2004 WL 1813933 (Colo. Aug. 16, 2004).

There does not appear to be a basis for an award of attorney fees in this case. Plaintiff has not claimed such a right by virtue of a court rule or private contract, but does point to a Colorado statute and two procedural rules as the bases for an award of attorney fees: Colorado Revised Statute § 13-17-202 and Federal Rules of Civil Procedure 54 and 68.

The Colorado statute cited by Plaintiff, § 13-17-202, is facially inapplicable. That is, while § 13-17-202 allows awards of actual costs in certain circumstances, § 13-17-202(1)(b) states plainly that "[f]or purposes of this section, 'actual costs' shall *not* include attorney fees . . . ." COLO. REV. STAT. § 13-17-202(1)(b) (2005) (emphasis added).

Further, as the Ninth Circuit Court of Appeals has held, Federal Rule of Civil Procedure 54, the second rule under which Plaintiff seeks attorney fees, "creates a procedure but not a right to attorneys' fees." *MRO Communications, Inc. v. AT&T Co.,* 197 F.3d 1276, 1280 (9th Cir. 1999) (referring to FED. R. CIV. P. 54(d)(2)). Rule 54 also requires, according to the plain language of the rule, a motion for attorney fees be based on another "statute, rule, or other grounds entitling the moving party to the award." FED. R. CIV. P. 54(d)(2)(B). To that end, Plaintiff asserts he is entitled to attorney fees based on Federal Rule of Civil Procedure 68.

Federal Rule of Civil Procedure 68 provides that a "party *defending* against a claim" has a right of action for costs, which could potentially include attorney fees, based

**MEMORANDUM DECISION AND ORDER –26–**

on a plaintiff's refusal of an offer of judgment.  FED. R. CIV. P. 68 (emphasis added).

Plaintiff claims Rule 68 entitles him to an award of attorney fees because, for example, in

September 2004, during mediation, Plaintiff offered to settle for $300,000 and, later, on

March 9, 2005, Plaintiff made a "final offer of judgment to settle this matter, inclusive of

attorney fees, costs, and interest, in the amount of Two Hundred and Eighty-Five

Thousand ($285,000.00) Dollars."  *Pl.'s Mem. in Supp.,* pp. 2, 9 (Docket No. 197-2).  It

appears both offers were rejected.  *Id.* at 2.

Nonetheless, Rule 68 does not support an award of attorney fees to Plaintiff in this

case.  The rule expressly provides a right of action for costs only to "a party defending

against a claim." FED. R. CIV. P. 68.  Further, "[t]he Rule has no application to offers

made by the plaintiff."  *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 350 (1981).  The

offers Plaintiff points to, in support of its Rule 68 argument, were offers made by

Plaintiff, not Defendants.  Clearly, Rule 68 does not apply for the principle Plaintiff

argues.

Seeing that none of the three statutes or rules to which Plaintiff has cited entitle

Plaintiff to an award of attorney fees, Plaintiff's motion is denied.

### B.    Costs

Plaintiff also moves for an award of costs under the same rules he cited in seeking

an award of attorney fees, i.e., Federal Rules of Civil Procedure 54 and 68, and Colorado

Revised Statute § 13-17-202.

**MEMORANDUM DECISION AND ORDER –27–**

1.      **Costs Pursuant to Federal Rule of Civil Procedure 54 and District of Idaho Local Civil Rule 54.1**

An award of standard costs in a diversity case in federal district court is usually governed by Federal Rule of Civil Procedure 54(d).  *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003).  Additionally, District of Idaho Local Civil Rule 54.1 allows for the award of costs to the prevailing party, provided that a party serve and file "a cost bill in the form prescribed by the Court" within "fourteen . . . days after entry of a judgment, under which costs may be claimed."  It further provides the "cost bill must itemize the costs claimed and be supported by a certificate of counsel that the costs are correctly stated, were necessarily incurred, and are allowable by law." *Id*.  Although not expressly stated by the rule itself, the cost bill form prescribed by the Court notes that "an itemization and documentation for requested costs" must be attached to the form.  Bill of Costs, District Court Forms, available at http://156.128.4.233/ docs/taxcosts.pdf.

The Bill of Costs form also makes reference to 28 U.S.C. §§ 1821 and 1924. Section 1924 state that "[b]efore any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."  28 U.S.C. § 1924 (1994).  Section 1821 allows witnesses "in attendance at any court of the United States, . . . or before any

**MEMORANDUM DECISION AND ORDER –28–**

person authorized to take his deposition pursuant to any rule or order of a court of the United States" to be paid an attendance fee of $40 per day for each day's attendance, as well as travel costs, with certain limitations.  28 U.S.C. § 1821 (1994).

The Ninth Circuit Court of Appeals recognizes that although Federal Rule of Civil Procedure 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party, it also vests discretion in the district court to refuse to do so." *Berkla v. Corel Corp.*, 302 F.3d 909, 921 (9th Cir. 2002) (citing *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000)).  However, "[i]n exercising that discretion, a district court must 'specify reasons' for its refusal to award costs." *Berkla*, 302 F.3d at 921.

Various reasons for denying costs have been approved by the Ninth Circuit Court of Appeals.  *See, e.g., Champion Produce*, 342 F.3d at 1023 (limiting approval of the denial of costs to contract actions, without addressing propriety of such in non-contract actions, where 1) damages awarded by the jury were significantly less than the plaintiff claimed under contract and 2) the defendant ultimately prevailed on the affirmative defenses of modification and waiver of the contract); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003) (summarizing approved factors justifying denial of costs to include losing party's limited financial resources; misconduct by the prevailing party; the importance of the issues; the importance and complexity of the issues; the merit of the plaintiff's case; and the chilling effect of imposing high costs on future civil rights litigants).

**MEMORANDUM DECISION AND ORDER –29–**

Defendants offer several reasons for denying costs to Plaintiff:  Plaintiff did not prevail because the award was substantially less than the $2.5 million dollars requested; Plaintiff's counsel's unprofessionalism during the litigation and trial; post-trial misconduct; Defendants' good faith and partially-successful defense; and attorney Dedvukaj's and attorney Barton's failure to properly itemize and provide documentation for the requested costs as required by District of Idaho Local Civil Rule 54.1.  *Defs.' Resp.,* pp. 4–6 (Docket No. 209).  It is the last of these arguments that raises the basis upon which the Court will rely in denying an award of all requested costs, with the exception of many of the requested witness fees, to Plaintiff under Rule 54 and Local Rule 54.1.

Judgment on the jury verdict was entered by the Court on March 28, 2005. (Docket No. 192).  On April 7, 2005, Plaintiff filed his motion for attorney fees and costs. (Docket No. 197).  Attached thereto, was Mr. Deduvkaj's listing the following, as "expenses . . . necessarily incurred to represent the Plaintiff through trial":  Lawsuit filing fee of $150.00, Expert Witness Fees of $38,588.86, Research Expenses of $2,762.65, as well as Hotel, Airfare, Auto Rental, and Other costs, for a total request of $48,342.56 in costs.

On April 7 and 8, 2005, Plaintiff filed two "Bill of Costs" forms.  (Docket Nos. 196 and 199).  However, the only category of requested costs for which there was any type of itemization attached to the form was for the witness fees category.  Further, there was no documentation attached in support of the requested costs.

**MEMORANDUM DECISION AND ORDER –30–**

### a.   Requests in Affidavit Attached to Plaintiff's Motion for Attorney Fees and Costs (Docket No. 197)

Of the various costs requested in the affidavit attached to Plaintiff's Motion for

Attorney Fees and Costs, the only fee recoverable is the lawsuit filing fee of $150.00.

The affidavit met the requirements of 28 U.S.C § 1924.  However, none of the listed costs

were accompanied by supporting documentation.  Therefore, the only cost of which the

Court has any supporting documentation is for the lawsuit filing fee, as such fee is court-

implemented.  Without timely-filed documentation, the other costs are not recoverable.

### b.   Requests in Bills of Costs (Docket Nos. 196, 199)

As noted previously, with their Bill of Costs, the only category for which any

itemization was attached was for the witness-fee category.  Therefore, only fees for this

category are potentially recoverable.

As to the witness fees requested, both attorneys Dedvukaj and Barton attached

completed witness-fee worksheets to their timely-submitted Bill of Costs forms.  *See Bill*

*of Costs* (Docket No. 196); *Bill of Costs* (Docket No. 199).  Mr. Dedvukaj listed

attendance and mileage costs for sixteen witnesses: Dr. Firoza Van Horn, Dr. Thomas

Park, Dr. Bassam Maaz, Dr. John F. Hanieski, Dr. Ghabi Kaspo, Dr. Phillip Mallory, Dr.

Rudy Limpert, Dr. Erin Bigler, Michael Rosko, Dr. Firas Zouabi, Steve McKracken,

Trooper Gary Gale, Trooper Darin Reeder, Bob Churchwell, Ali Al-Kindi, and Donald

Asa.  *Bill of Costs* (Docket No. 196).  Mr. Barton listed attendance and mileage costs for

three witnesses: Michael Phillips, M.D., Richard Wilson, M.D., and David Nilsson, Ph.D.
*Bill of Costs* (Docket No. 199).

For each witness, Plaintiff seeks the statutory attendance cost of $40.00 for one day, along with mileage costs, with the exception of Ali Al-Kindi and Donald Asa. Plaintiff requests the $40.00 statutory attendance cost for seven days for Ali Al-Kindi, and two days for Donald Asa.

The witnesses listed on the worksheet also testified as Plaintiff's witnesses, either in person or via video or written deposition with the exception of Drs. Kaspo, Limpert, Phillips, Wilson, and Nilsson, as well as Bob Churchwell. *Minute Entry* (Docket Nos. 177–81). More specifically, however, Drs. Wilson and Nilsson were called as *defense* witnesses. *Minute Entry* (Docket No. 181). Further, Bob Churchwell was excluded by the Court because of his untimely disclosure. *Minute Entry* (Docket No. 177). Drs. Kaspo, Limpert, and Phillips did not testify, nor does the record contain depositions of their testimony.

As explained above, witness fees are recoverable only for witnesses who actually testified at trial or who were deposed for the purpose of producing testimony at trial. *See* 28 U.S.C. § 1821 (1995). Seeing as such, Plaintiffs are not entitled to fees requested for Bob Churchwell, Dr. Kaspo, nor Dr. Limpert, as none of them testified at trial or were deposed for such purpose, according to the record.

As for Drs. Wilson and Nilsson, the purpose of allowing Plaintiff to recover witness fees would be to reimburse Plaintiff for his actual witness fee expenses incurred.

**MEMORANDUM DECISION AND ORDER –32–**

Therefore, it is logical that Plaintiff is entitled to recover proper witness fee requests for

his own witnesses.  However, Plaintiff has not submitted documentation indicating that he

paid any fee to defense witnesses Drs. Wilson and Nilsson.  Further, Plaintiff has not

pointed to any legal authority indicating that Plaintiff would be entitled to recover a fee

for defense witnesses without any documentation indicating that Plaintiff owed those

witnesses a fee.  Therefore, the Court denies Plaintiff's requested fees for Drs. Wilson

and Nilsson.

Lastly, as Section 1821 indicates, witnesses are entitled to the $40.00 statutory

attendance fee "for each day's attendance" at trial or deposition.  This becomes important

as to Ali Al-Kindi, for whom seven days attendance fees are requested, and Donald Asa,

for whom two days attendance fees are requested.

As the record indicates, Ali Al-Kindi (brother of Plaintiff) testified in person on

behalf of  Plaintiff at trial only on March 21, 2005.  *Minute Entry* (Docket No. 180).

Because Plaintiff has not submitted any timely-filed documentation that would indicate

the nature of Ali Al-Kindi's travel expenses or a valid reason why he should be allowed

an award of fees for watching six days of trial, the Court will allow an attendance fee for

only that day in which Ali Al-Kindi actually testified in court, rather than the seven days

listed on the witness fee worksheet.

The record also indicates that Donald Asa testified in person and by written

deposition on behalf of Plaintiff at trial only on March 18, 2005.  *Minute Entry* (Docket

No. 179). The Court can logically assume that Mr. Asa was "in attendance" for the day of

**MEMORANDUM DECISION AND ORDER –33–**

taking his written deposition.  Therefore, Plaintiff is entitled to the one day attendance fee

requested for Mr. Asa.

In summary, therefore, Plaintiff is awarded the following costs:

- Lawsuit filing fee          $150.00

- Witness fees (Attendance + Mileage = Total):
- Dr. Firoza Van Horn         ($40.00 + $9.62 = $49.62)
- Dr. Thomas Park             ($40.00 + $12.95 = $52.95)
- Dr. Bassam Maaz             ($40.00 + $8.51 = $48.51)
- Dr. John F. Hanieski        ($40.00 + $43.66 = $83.66)
- Dr. Ghabi Kaspo             ($0)
- Dr. Phillip Mallory         ($40.00 + $6.66 = $46.66)
- Dr. Rudy Limpert            ($0)
- Dr. Erin Bigler             ($40.00 + $37.00 = $77.00)
- Michael Rosko               ($40.00 + $2.96 = $42.96)
- Dr. Firas Zouabi            ($40.00 + $7.77 = $47.77)
- Steve McKracken             ($40.00 + $9.62 = $49.62)
- Trooper Gary Gale           ($40.00 + $14.06 = $54.06)
- Trooper Darin Reeder        ($40.00 + $7.77 = $47.77)
- Bob Churchwell              ($0)
- Ali Al-Kindi                ($40.00 + $37.00 = $77.00)
- Donald Asa                  ($80.00 + $37.00 = $117.00)
- Michael Phillips, M.D.      ($0)
- Richard Wilson, M.D.        ($0)
- David Nilsson, Ph.D.        ($0)

Total Witness Fees:          $794.58

**Total Costs Awarded:**          **$944.58**

The Court recognizes that, following Defendants' objection to the requested costs

on the grounds of lack of itemization and documentation, attorney Dedvukaj submitted,

on May 3, 2005, copies of bills for depositions, expert witness fees, lodging, car rental,

and the like, many of which are not allowable under the local rule even if timely and

properly submitted.  Some of the bills submitted were duplicates and were not otherwise

**MEMORANDUM DECISION AND ORDER –34–**

organized.  Submission of documentation well after the fourteen-day limit of Local Rule

54.1, without itemization, or even an attached completed "Bill of Costs" form, does not

sufficiently comply with the requirements of the local rule.  Therefore, these submissions

were not adequate documentation for the requested costs as contemplated by the rule.

Thus, under Rule 54 and Local Rule 54.1, Plaintiff is entitled only to the $944.58, as

explained above.

### 2.    Costs Pursuant to Federal Rule of Civil Procedure 68

Plaintiff also contends that he is entitled to costs pursuant to Federal Rule of Civil

Procedure 68.  In support, Plaintiff points to Defendants having rejected several of

Plaintiff's settlement offers, Defendants' refusal to discuss settlement during the trial, and

the resulting verdict being greater than Plaintiff's offers for settlement.  However, for the

same reason as with Plaintiff's request for attorney fees, the Court concludes that Rule 68

does not entitle Plaintiff to an award of costs.  That is, "Rule 68 has no application to

offers made by the plaintiff."  *Delta Air Lines*, 450 U.S. at 350.

### 3.    Costs Pursuant to Colorado Revised Statute § 13-17-202

Lastly, Plaintiff contends that he is entitled to recover costs under Colorado

Revised Statute § 13-17-202  because of Defendant's rejection of the same settlement

offers.

While written offers of settlement by a plaintiff are contemplated in Colorado

Revised Statute § 13-17-202, Colorado's statute pertaining to offers of settlement, § 13-

17-202 is clearly inapplicable in this case.  Section 13-17-202(1)(a)(I) provides (1) that it

**MEMORANDUM DECISION AND ORDER –35–**

pertains to civil actions commenced in the state of Colorado, and (2) that the applicable

offer must be made *in writing more than fourteen days before the commencement of trial.*

COLO. REV. STAT. § 13-17-202 (2005).  It further provides that evidence of offers made

fourteen days or less prior to trial are inadmissible for any purpose.  COLO. REV. STAT.

§ 13-17-202-(1)(a)(VI).

### a.      Civil Actions Commenced in the State of Colorado

As stated above, Colorado Revised Statute § 13-17-202 clearly states that the

section applies to "any civil action of any nature commenced or appealed in any court of

record in this state," i.e., the state of Colorado.  COLO. REV. STAT. § 13-17-202(1)(a)

(2005).  This case was neither commenced in, litigated in, tried in nor appealed in

Colorado.  Rather, it was commenced in Michigan and litigated and tried in Idaho.

Therefore, § 13-17-202 does not apply to the instant action.

### b.      Offers in Writing More than Fourteen Days Prior to Trial

Even had this case been commenced in Colorado, in order for § 13-17-202 to

apply, there must also have been qualifying offers, i.e., offers that were made in writing

more than fourteen days prior to trial.  COLO. REV. STAT. § 13-17-202 (2005).

At oral argument, Plaintiff suggested that the previous version of the Colorado

statute did not require the settlement offer to be in writing.  The Court has determined,

however, that the amendment requiring the offer to be in writing became effective July 1,

2003, and is applicable to all cases filed on or after that date.  H.B. 03-1121, 64th Gen.

Assem., 1st Reg. Sess. (Colo. 2003).  Plaintiff's Complaint was filed in the Eastern

**MEMORANDUM DECISION AND ORDER –36–**

District of Michigan, Southern Division, on July 22, 2003. Therefore, it is clear that the statutory requirement that qualifying offers be in writing is applicable to the instant case.

Plaintiff also points to three alleged offers of settlement, which he claims Defendants rejected thereby entitling him to costs: 1) September 1, 2004, offer of settlement in the amount of $300,000, made prior to the termination of mediation; 2) January 26, 2005, offer made, Plaintiff claims, both verbally and in writing, in the amount of $450,000; and 3) final offer to settle made during the course of depositions and memorialized in a March 9, 2005, letter. *Pl.'s Supplemental Resp.,* pp. 1–4 (Docket No. 219). Each potential offer to settle will be considered separately.

### i.        September 1, 2004 Offer During Mediation

Plaintiff argues he made an "offer of settlement in the amount of $300,000" on "September 1, 2004, prior to the termination of the mediation which was conducted by Judge Smith." *Id.* at 2. Further, Plaintiff, in both written and oral argument, refers to these settlement negotiations before State of Idaho District Judge Randy Smith in an attempt to demonstrate that Defendants were totally unreasonable and did not negotiate settlement in good faith. Regardless, as a policy statement and rule of this Court regarding settlement conferences, District of Idaho Local Civil Rule 16.4(c)(6) provides that "[n]o oral statement, written document, or other material considered during the settlement procedure may be used against any party in litigation." D. Idaho. L. Civ. R. 16.4(c)(6). Therefore, even though the settlement conference referred to was conducted by a state judicial officer, it was in this pending federal court action. The principle of the

**MEMORANDUM DECISION AND ORDER –37–**

local rule applies irregardless of whether the mediator was a state judge, a federal judge, a

retired judicial officer, or a private settlement consultant or mediator.  As long as the case

being mediated is a federal court action, the local rule of this District applies.

Accordingly, the Court will not consider any statement, evidence, assertion or argument

relating to those negotiations in a mediation which was an extension of this federal court

action.  Hence, the asserted September 1, 2004 offer, to the extent one may or may not

have been made during the mediation with District Judge Randy Smith, does not entitle

Plaintiff to an award of costs pursuant to Colorado Revised Statute § 13-17-202.

### ii.    January 26, 2005 Offer

Plaintiff also attempts to establish that an offer of settlement was evidenced in a

letter from attorney Barton to attorney Dedvukaj dated January 26, 2005, which discusses

an offer to settle for $450,000, claimed by Plaintiff to have been made to Defendants on

the same day by attorney Barton.  *Pl.'s Supplemental Resp.,* Ex. 2 (Docket No. 219-2).

However, the parties dispute whether the offer was made in writing.  *Defs.' Resp.,* p. 5

(Docket No. 209).  Plaintiff did not submit a copy of the purported offer with his motion.

Instead, he merely submitted a copy of the above referenced January 26, 2005 letter from

attorney Barton to attorney Dedvukaj, indicating that Mr. Barton had made a verbal offer

to settle for $450,000, which he intended to follow-up with a letter to Defendants'

attorney, David Gardner.  *Pl.'s Mem. in Supp.,* pp. 10–11 (Docket No. 197-2).  In

response, attorney Gardner submitted an affidavit stating that the offer was not made in

writing.  *Gardner Aff.,* ¶ 6 (Docket No. 210-2).  In reply, Plaintiff submitted a copy of a

**MEMORANDUM DECISION AND ORDER –38–**

two-line January 26, 2005, letter from Mr. Barton to Mr. Gardner which he claims

confirms the $450,000 offer.  *Pl.'s Supplemental Resp.,* Ex. 2 (Docket No. 219-2).

Where the Colorado law clearly requires that an offer be in writing in order to

recover costs under the statute, it would be reasonable to expect that the original writing

relied upon would accompany the motion for costs.  The second January 26, 2005 letter

was submitted only after defense counsel filed an affidavit denying ever having received

such a written offer.  Under these circumstances, especially where there is a dispute as to

whether the offer was or was not made in writing, there are simply too many unanswered

questions for the Court to feel comfortable in awarding costs or fees on this basis.

### iii.    March 9, 2005 Offer

The only other potentially-qualifying offer is another disputed letter, this time

dated March 9, 2005 from Plaintiff offering to settle for $285,000.  *See Pl.'s Mem. in

Supp.,* Ex. 1.  Irregardless of whether the letter containing the offer was in fact mailed to

Defendants, it was delivered less than fourteen days prior to trial which commenced on

March 16, 2005.  The clear directive of Colorado Revised Statute § 13-17-202 requires

that settlement offers made less than fourteen days prior to trial are inadmissible for any

purpose.  COLO. REV. STAT. § 13-17-202(1)(a)(VI) (2005).  Therefore, the receipt or

denial of the March 9, 2005 offer does not entitle Plaintiff to an award of costs or fees

under § 13-17-202.

**MEMORANDUM DECISION AND ORDER –39–**

## C.     Conclusion

After carefully and judiciously considering all the circumstances, the Court finds, and thus concludes, that Plaintiff is not entitled to an award of attorney fees under Federal Rules of Civil Procedure 54 or 68, nor under Colorado Revised Statute § 13-17-202 for the reasons stated above.  Likewise, for the reasons set forth here, Plaintiff is not entitled to an award of costs under the applicable rules and his motion for attorney fees and costs is denied.

## V.

## ASSOCIATE'S MOTION TO INTERVENE

On April 13, 2005, several weeks prior to trial, Associates Insurance Company filed a renewed Motion to Intervene seeking to protect their subrogation interest in this action.  The Court denied Associates' initial Motion to Intervene primarily to avoid inserting the issue of insurance into the case.  However, certain safeguards were implemented in an attempt to assure that Associates' interests were protected.  In denying the initial motion, it was denied without prejudice, noting that later events could cause Associates and the Court to deem that its interests were not being protected.  *Order* (Docket No. 135).  The Court notes that neither Al-Kindi nor Edwards Brothers have objected to or otherwise responded to Associate's current Motion to Intervene.

An applicant may intervene as of right under Federal Rule of Civil Procedure 24(a) if (1) the motion to intervene is timely filed; (2) the applicant has a "significantly protectable" interest that is related to the property or transaction that is the subject of the

**MEMORANDUM DECISION AND ORDER –40–**

action; (3) the applicant is situated so that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interests are inadequately represented by the parties to the action. *Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir.1998).

To determine whether an applicant's motion to intervene is timely filed, i.e., the first of the *Mendonca* factors, the Court examines: (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay. *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 719 (9th Cir.1994).  Further, a post-judgment motion to intervene is generally considered timely if it is filed before the time for filing an appeal has expired. *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1044–45 (9th Cir.2000), *overruled in part on other grounds by City of Columbus v. Ours Garage & Wrecker Serv. Inc.*, 536 U.S. 424 (2002).

It is undisputed that Associates has a considerable interest in this case, having paid in excess of $120,000 to Plaintiff for medical expenses and lost earnings.  Given that the Court's primary concerns which prevented intervention previously, are now largely absent, Associate's motion will be granted at this time.  There is no longer a risk of reopening discovery or delaying the trial.  There is no risk of introducing potentially-prejudicial insurance evidence into the jury trial.  Therefore, the basis for allowing intervention now is that there is no reason to believe that Associate's direct involvement at this stage of the proceeding will be inappropriate, that there will be no prejudice to the

**MEMORANDUM DECISION AND ORDER –41–**

other parties by allowing its intervention, that there has been no delay in filing, and it will be allowed to intervene.

Further, as to the other *Mendonca* factors, the Court finds, and thus concludes, that Associates has a "significantly protectable" interest related to this action, that the disposition may impede or impair Associates' ability to protect that interest, and that Associates' interests are not now adequately represented by the parties absent its active participation as a party.  Therefore, Associates' renewed motion to intervene is granted.

## VI.

## MOTION FOR REIMBURSEMENT

After filing its renewed Motion to Intervene, Associates filed a motion for an order requiring Defendants to reimburse Associates for 90% of the payments made to Plaintiff for medical expenses and lost wages. (Docket No. 216).  Neither party has filed a response to this motion.

In seeking reimbursement from Defendants for payments made to Plaintiff for medical bills and lost wages, Associates sites to three sources of authority: Michigan law, specifically MICH. COMP. LAWS. ANN. § 500.3116(2); Michigan case law, i.e., *All State Insurance Company v. Jewel*, 452 N.W.2d 896 (Mich. Ct. App. 1990); and the specific trucking policy issued by Associates, insuring Plaintiff.  *Mem. in Supp.,* p. 2 (Docket No. 216-2); *Mem. in Supp.,* p.2 (Docket No. 88).  However, Associates not presented any authority as to why the Court should look to Michigan law in this case, and none of their

**MEMORANDUM DECISION AND ORDER –42–**

cited references authorizes a Court to order an insurer to be reimbursed from a defendant who was held liable for the insured's injuries, as opposed to the insured himself.

First, Section 500.3116(2) clearly states that, "[i]f personal protection insurance benefits have already been received, *the claimant shall repay to the insurers* out of the recovery a sum equal to the benefits received . . . ." MICH. COMP. LAWS. ANN. § 500.3116(2) (2002) (emphasis added). In this case, Associates seeks repayment of insurance benefits already received by Plaintiff. Section 500.3116(2) directs Plaintiff to repay Associates, not Defendants.

Second, *Allstate Insurance Company v. Jewell*, likewise does not hold that a Court must order a liable defendant to pay the plaintiff's insurer part of the judgment. Rather, *Jewell* addresses the insurer's right to reimbursement, but not the source of repayment.

Third, the specific policy between Associates and Plaintiff is also inapplicable in this case. That is, in that policy, Associates states, "[i]f we make any payment and the 'Insured' recovers from another party, the 'Insured' shall hold the proceeds in trust for us and pay us back the amount we have paid." *Gabiola Aff.*, Att. 1, Ex. C (Docket No. 97). Notably, the policy does not state, nor would it be enforceable had it stated that the "other party" from whom "Insured" recovered would hold the proceeds in trust and pay Associates back.

Because the three references discussed above do not authorize Associates to be reimbursed directly by Defendants, the Court denies Associates' motion to be reimbursed

**MEMORANDUM DECISION AND ORDER –43–**

by that party, but will allow Associates leave to file a motion to seek reimbursement by

Plaintiff.

## VII.

## ORDER

Based on the foregoing,  IT IS HEREBY ORDERED:

1.      Plaintiff's Motion to Amend or Alter Judgment or in the Alternative,

        Motion for Judgment Notwithstanding the Verdict (Docket No. 193)

        is DENIED.

2.      Plaintiff's Motion for Attorney Fees and Costs (Docket No. 197) is

        DENIED in part and GRANTED in part.  Plaintiff's motion for attorney

        fees is DENIED.  Plaintiff is awarded $944.58 in costs, for its lawsuit filing

        fee and allowed witness fees, as provided above and his motion is otherwise

        DENIED.

3.      Defendants' Motion to Alter Judgment (Docket No. 202) is DENIED.

4.      Associates' Motion to Intervene (Docket No. 206) is GRANTED.

**MEMORANDUM DECISION AND ORDER –44–**

5.     Associates' Motion for Reimbursement (Docket No. 216) is DENIED with

leave to file a modified Motion for Reimbursement, seeking reimbursement

from Plaintiff.



DATED:  **September 16, 2005**.

Larry M. Boyle
United States District Court

**MEMORANDUM DECISION AND ORDER –45–**